12 CIV 4681

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FISHEL LITZMAN, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )  Civil Case No. |
|  | ) |
| NEW YORK CITY POLICE DEPARTMENT, | ) |
| THE CITY OF NEW YORK, | ) |
| and RAYMOND W. KELLY, AS | ) |
| COMMISSIONER OF THE NEW YORK | ) |
| CITY POLICE DEPARTMENT, | ) |
|  | ) |
| Defendants. | ) |

## COMPLAINT FOR INJUNCTION AND DAMAGES

### NATURE OF THE COMPLAINT

This is an action to remedy the unconstitutional discriminatory termination of Fishel

Litzman's career as a Probationary Police Officer. That termination was based entirely and

exclusively upon Mr. Litzman's refusal to trim his beard, which naturally extends to not more

than about one-half inch from his face, prior to his graduation from the Police Academy with the

2012 class. Although Mr. Litzman advised the New York City Police Department ("NYPD") at

the outset of the application process that his religious observance forbade the trimming of his

beard, the NYPD swore him in as a Probationary Police Officer and caused him to resign the job

he previously held as a paramedic. Since the NYPD permits police officers to grow beards after

they graduate from the Police Academy, there is no legitimate governmental purpose in directing

him to trim his beard to a length that does not exceed one millimeter while he is in the Police

Academy. The NYPD directive that he trim his beard once – although he would not be required

to trim it after his graduation – is "targeted" at conscientious religious observers who will refuse

to commit such a violation even one time. The "accommodation" purportedly provided by the NYPD would not satisfy the federal and local legal standards governing religious discrimination in employment if Mr. Litzman initiated proceedings before the Equal Employment Opportunity Commission or before New York State and New York City Human Rights Commissions. Mr. Litzman has demonstrated by his outstanding performance at the Police Academy that he would be a first-rate New York City Police Officer, and the Court should promptly give him the opportunity to achieve his lifelong ambition in this regard.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1346(a)(2), and under 42 U.S.C. §§ 1983 and 2000e.

2.    This Court has supplemental jurisdiction over claims under the laws of New York State and of the City of New York under 28 U.S.C. § 1367.

3.    Venue in this District is proper under 28 U.S.C. § 1391(b).

## THE PARTIES

4.    Plaintiff is 38 years old. He resides in Monsey, New York, with his wife and five children.

5.    Defendant New York City Police Department is an agency of the City of New York.

6.    Defendant City of New York is a municipality within the State of New York.

7.    Defendant Kelly is the Commissioner of Police of the City of New York and is sued in his official capacity.

## THE MATERIAL FACTS

8.    Plaintiff has always been an Orthodox Jew and follows the rules and traditions of the Chabad-Lubavitch Jewish community.

9.    In accordance with the religious observances of Chabad-Lubavitch, plaintiff does not trim his beard and has never done so.

10.    Plaintiff's beard naturally grows approximately one-half inch from his skin.

11.    Plaintiff has been employed as an EMS paramedic by Maimonides Medical Center (June 2002-January 2012), by New York Presbyterian Hospital (February 2006-January 2012), and by the Village of Kiryas Joel (February 2006-January 2012).

12.    On February 20, 2009, plaintiff took the exam for Police Officer No. 8322. He scored 97.6% on the exam and was given a list number of 98.

13.    On April 13 2011, plaintiff was advised by letter from the NYPD to report to 1 Lefrak City Plaza for an initial medical exam on April 28, 2011, at 6:30 am. A copy of the letter is Exhibit A to this Complaint.

14.    During the initial appointment plaintiff's photograph was taken, both front and profile. Plaintiff inquired at the time whether it would be permissible for him to keep his naturally short beard intact.

15.    Plaintiff was told to speak to the investigator who would be assigned and who would guide him on how to submit a request for a religious accommodation.

16.    On September 27, 2011, plaintiff wrote to the NYPD requesting a religious accommodation.

3

17.     Plaintiff advised the NYPD that he had a beard and would not, because of his religious convictions, trim his beard. He requested a religious accommodation to keep his beard intact. A copy of the form of September 27 and its attachment is Exhibit B to this Complaint.

18.     On October 3, 2011, the NYPD responded "that in the event you become a Police Recruit, your inquiry will be addressed." A copy of the NYPD's response is Exhibit C to this Complaint.

19.     Plaintiff was not told that he would have to shave or trim his beard as a condition for graduation from the NYPD Police Academy.

20.     Plaintiff was advised on January 7, 2012, that he was selected for the January 2012 class at the NYPD Police Academy.

21.     Pursuant to the instruction he received from the NYPD, plaintiff resigned from the jobs enumerated in paragraph 11.

22.     Plaintiff began studies at the Academy on January 9, 2012, and was sworn in as a NYPD Probationary Police Officer on that day.

23.     On January 13, 2012, plaintiff was ordered to travel to NYPD Headquarters, Office of Equal Employment Opportunity, and was instructed orally to trim his beard. He responded that he could not trim his beard as a matter of religious conscience.

24.     On January 17, 2012, plaintiff was again ordered to travel to NYPD Headquarters, Office of Equal Employment Opportunity, and was again instructed orally to trim his beard. He again responded that he could not trim his beard as a matter of religious conscience.

25.     On January 24, 2012, plaintiff was again ordered to travel to NYPD Headquarters, Office of Equal Employment Opportunity, and was again instructed orally to trim his beard. He again responded that he could not trim his beard as a matter of religious conscience.

26.    On January 24, 2012, plaintiff received a denial of his request for a religious accommodation. A copy of the denial is Exhibit D to this Complaint.

27.    On January 30 and 31, 2012, and on February 1 and 2, 2012, plaintiff was given "Command Disciplines" for "failure to maintain personal appearance as per Patrol Guide 203-07." Plaintiff was directed to sign copies of the four "Command Disciplines" but his request to have copies that he could retain was denied.

28.    On February 1, 2012, plaintiff submitted another request for a religious exemption. A copy of the request of February, with names of police officers deleted, is Exhibit E to this Complaint. Plaintiff has never received a response to the request of February 1, 2012.

29.    On March 16, 2012, acting on advice given him by the Employee Management Division, plaintiff sent a personal memorandum explaining his situation to the Police Commissioner.  A copy of the memorandum (with names deleted) is Exhibit F to this Complaint.

30.    Plaintiff has never received a response to the memorandum dated March 16, 2012.

31.    Plaintiff was permitted by the defendants to continue the course of instruction at the NYPD Police Academy after January 24, 2012.

32.    On information and belief, during the period that he took instruction at the Police Academy, plaintiff ranked in the top one percent (1%) of a class numbering more than 850.

33.    On information and belief, plaintiff's scores on exams were: (a) 99; (b) 100; (c) 96. Plaintiff also scored 100% on all six Qualification Courses of Fire.

34.    On June 8, 2012, at approximately 7:14 a.m., plaintiff was served with a letter while in class at the Police Academy.  A copy of the letter is Exhibit G to this Complaint.

35.    The effect of the letter dated June 7, 2012, is to terminate plaintiff's status as a "Probationary Police Officer" with the New York City Police Department.

36.    Plaintiff was given no advance notice of the content or substance of the letter.

37.    Plaintiff was accompanied home by representatives of the NYPD on June 8, 2012. The following items were removed from him and his home and returned to the Police Department: Temporary Police ID, NYPD Metro Card, MTA Police Pass, Ballistic vest, Patrol Guide, Recruit Handbook, Recruit Discipline Handbook, Police Student Guide, Disorder Control/Scooter Helmet, Escape Hood and accompanying carry bag.

38.    The June 7 letter did not explicitly refer to plaintiff's refusal to trim his beard. Plaintiff has been told by media representatives that the NYPD has publicly stated that plaintiff's status was terminated because he refused to trim his beard to a length of one millimeter.

39.    At no time has plaintiff been shown or directed to any text of any regulation of the New York City Police Department that states that beards must be trimmed to a length not exceeding one millimeter.

40.    On information and belief, there is no written regulation or provision in the "Patrol Guide" of the NYPD that states that beards must be trimmed to a length not exceeding one millimeter.

41.    On information and belief, there are a substantial number of officers in the New York City Police Department who wear police uniforms, are active members of the New York City Police Department, and who have beards exceeding one millimeter in length.

42.    On information and belief, the NYPD permits officers to grow and maintain beards that exceed one millimeter in length so long as the officers trim their beards while at the Police Academy and their beards do not exceed one millimeter in length at the time they graduate from the Police Academy and are formally inducted into the police force.

43.     There is no legitimate governmental interest in forbidding uniformed police officers to wear beards or to have facial growth. This is proved by the fact that there are a considerable number of New York City uniformed police officers who wear beards.

44.     There is no legitimate governmental interest in compelling police officers to trim their beards one time as a condition of graduation from the NYPD Police Academy and entry on duty as uniformed police officers.

45.     There is no legitimate governmental interest in compelling uniformed police officers to violate their religious convictions by trimming their beards one time in order to graduate from the Police Academy and qualify for the police force.

46.     Permitting police officers to keep facial hair not in excess of one millimeter in length at the time they formally join the police force is not a reasonable accommodation for those whose religious convictions prohibit any trimming of their beards at any time.

47.     In the District of Columbia, police officers are permitted to wear beards and religious garb such as turbans.


**FIRST CLAIM**
**(First Amendment – Free Exercise)**

48.     The conduct alleged in paragraphs 4 through 47 of this Complaint "targets" religious exercise and violates the plaintiff's constitutional right to the free exercise of religion by requiring him to shave his beard at least one time in violation of his religious convictions in order to qualify for regular service on the New York City Police Department. No compelling legitimate governmental interest justifies this requirement imposed by the NYPD.

7

49.     The requirement that a Probationary Police Officer trim his beard to within one millimeter in length in order to begin service as a police officer has the principal effect of excluding sincere religious observers such as plaintiff. Individuals who do not have sincere religious convictions are not excluded by such a requirement because they are ordinarily willing to trim their beards one time and re-grow their facial hair thereafter when they are in service as police officers. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).

## SECOND CLAIM
### (Fifth and Fourteenth Amendments – Due Process of Law)

50.     The defendants' conduct alleged in paragraphs 4 through 47 of this Complaint denies to the plaintiff due process of law by imposing on his entry on service as a regular New York City police officer a one-millimeter condition on facial hair that is not stated in any police regulation or in the "Patrol Guide."

51.     The one-millimeter limitation on facial hair violates standards of due process of law because it is arbitrary and irrational.

## THIRD CLAIM
### (Title VII, Civil Rights Act – Religious Discrimination in Employment)

52.     The defendants' purported "accommodation" to the plaintiff's refusal to violate his religious convictions – that he should trim his facial hair to not more than one millimeter in length – effectively excludes from the New York City Police Department Orthodox Jews who never trim their beards and, on information and belief, conscientious Sikhs and Muslims.

53.     The limitation on the length of facial hair is religiously discriminatory.

8

54.    The exception for facial hair that is less than one millimeter in length is not a reasonable accommodation that would be accepted by the Equal Employment Opportunity Commission ("EEOC") if plaintiff were to institute a proceeding before the EEOC alleging a violation of Title VII of the Civil Rights Act.

55.    The defendants cannot demonstrate that permitting facial hair longer than one millimeter would create an "undue hardship."

## FOURTH CLAIM
### (42 U.S.C. § 1983)

56.    The defendants' conduct alleged in paragraphs 4 through 47 of this Complaint, committed under color of law, denies to the plaintiff rights, privileges, and immunities secured by the Constitution and laws of the United States by depriving plaintiff of the opportunity to serve as a uniformed member of the New York City Police Department solely because of his religious observance.

57.    Plaintiff is excluded from service as a uniformed member of the New York City Police Department even though his performance in training has been outstanding, and, if not for the religious convictions that prohibit trimming his beard, he would be at or near the top of a class of more than 850 recruits.

## FIFTH CLAIM
### (Religious Discrimination – New York Constitution)

58.    The defendants' exclusion of plaintiff from service as a uniformed New York City police officer violates Article I, Section 3 of the Constitution of the State of New York because it

does not allow plaintiff "the free exercise and enjoyment of religious profession and worship" as construed by the courts of New York State.

59.    The purported governmental interest in requiring facial hair to be less than one millimeter long does not justify rejection of candidates for duty as police officers who, out of religious conviction, refuse to trim their beards. Hence the rule invoked by the defendants to exclude plaintiff violates the Constitution of the State of New York as applied by the New York Court of Appeals. *Rivera v. Smith*, 63 N.Y.2d 501, 472 N.E.2d 1015(1984); *Brown v. McGinnis*. 10 N.Y.2d 531, 180 N.E.2d 791 (1962).

60.    The defendants' conduct particularly violates Article I, Section 3 of the Constitution of the State of New York because the New York Police Department's practice is to permit a beard to be grown after a Probationary Police Officer graduates from the Police Academy and joins the New York police force. This policy demonstrates that the governmental interest is in only requiring that a beard be trimmed once. No legitimate governmental policy supports such a one-time requirement.

## SIXTH CLAIM
### (Religious Discrimination – New York City Law)

61.    The defendants' purported accommodation of plaintiff's religious observance was inadequate under the August 30, 2011, amendment to Sections 8-102 and 8-107 of the New York City Administrative Code ("The Workplace Religious Freedom Act"), which was announced with great publicity by Mayor Michael Bloomberg.

62.    Under the terms of the Workplace Religious Freedom Act, the defendants cannot justify excluding the plaintiff from employment as a New York City police officer unless they can establish "undue hardship" under three specific criteria, including (a) "the identifiable cost of

10

the accommodation, including the costs of loss of productivity," (b) the number of individuals who will need the particular accommodation to a sincerely held religious observance or practice," and (c) "the degree to which the geographic separateness or administrative or fiscal relationship of the facilities will make the accommodation more difficult or expensive."

63.    The defendants cannot establish that "undue hardship" would result if the plaintiff were permitted to serve as a police officer without trimming his beard under any of these three criteria in New York City's Workplace Religious Freedom Act.

## PRAYERS FOR RELIEF

WHEREFORE plaintiff demands the entry of judgment against the defendants for

(a) preliminary and permanent injunctive relief ordering the defendants to withdraw and rescind the letter of June 7, 2012, which terminated plaintiff's status as a Probationary Police Officer, the oral directives given to the plaintiff on January 13, 17, and 24, 2012, and the "Command Disciplines" dated January 30 and 31, and February 1 and 2, 2012;

(b) preliminary and permanent injunctive relief directing the defendants to grant plaintiff's requests for religious accommodation;

(c) preliminary and permanent injunctive relief restoring plaintiff forthwith to the position he occupied at the Police Academy on June 7, 2012, prior to his receipt of Exhibit G, and permitting him to conclude his training and to graduate with his class with such honors as he would receive if the defendants had not imposed the one-millimeter limitation on plaintiff's facial hair and had granted his request for religious accommodation;

(d) preliminary and permanent injunctive relief restraining the defendants and any persons acting in concert with them or under their supervision and direction from taking any

adverse action against plaintiff at any time during his service with the New York City Police Department on account of his beard or on account of his refusal to trim his beard and facial hair;

(e) actual damages for injury suffered by the plaintiff on account of the denial of a religious accommodation and for the consequences of discipline relating to his refusal, because of religious conscience, to trim his beard, including loss of wages resulting from unemployment after the termination of June 7, 2012;

(f) attorneys' fees pursuant to 42 U.S.C. § 1988 and all applicable provisions of federal and state law; and

(g) such other and further relief as to this Court may seem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury.


Dated:  June 14, 2012

NATHAN LEWIN (NL-3424)
ALYZA D. LEWIN (AL-2284)
LEWIN & LEWIN, LLP
1775 Eye Street NW, Suite 850
Washington, DC  20006
(202) 828-1000 *phone*
nat@lewinlewin.com

RICHARD H. DOLAN (RD-2212)
SCHLAM STONE & DOLAN, LLP
26 Broadway, 19th Floor
New York, NY 10004
(212) 344-5400
rhd@schlamstone.com

*Attorneys for Plaintiff*

12

## VERIFICATION

I, Fishel Litzman, plaintiff in this action, hereby verify under penalty of perjury that the factual allegations made in this Complaint are true and correct.

Dated:   $JUNE 14, 2012$

FISHEL LITZMAN

# EXHIBIT A



**POLICE DEPARTMENT**
**APPLICANT PROCESSING DIVISION**
**4201 FOURTH AVENUE**
**BROOKLYN, NEW YORK 11232**
**(718) 972-7344**

Dear Candidate:

Congratulations on having passed the written test for **POLICE OFFICER**. However, in order to be eligible for appointment, it is necessary that you take a medical examination. Candidates who pass the medical exam will remain to begin their character investigation. You should anticipate spending the entire day.

Therefore, you are to report as follows:

*1155 AM 4/14/11*
*AT SILVER  THU APRIL 28*
*0630*

One Lefrak City Plaza
59-17 Junction Boulevard
Rego Park, N.Y. 11368 - 16ᵗʰ Floor

**DAY/DATE: *WEDNESDAY, APRIL 20, 2011***      **TIME: *6:30 AM***

ON TIME APPEARANCE IS MANDATORY -- LATENESS WIL NOT BE TOLERATED
DO NOT BRING FRIENDS OR RELATIVES TO THIS APPOINTMENT

In order to be processed, candidates must have the following:

A) FORTY FIVE (45) Semester College credits from an accredited college or university with a minimum 2.0 Cumulative G.P.A. (grade point average) to start the process, but must have 60 college credits at time of hire, or two *(2) years (24 months)* Active Military Service by July 1, 2011.

B) Must be 21 years of age by July 1, 2011.

C) Candidates who were 35 years of age on the first day of filing for the written exam will be deemed **OVERAGE** and not qualified for hire to the NYC Police Department.

D) Promotional Cadets must have graduated with a B.A. or B.S. Degree with a minimum 2.0/cumulative GPA (grade point average).

Candidates who do not meet these qualification requirements, or have any questions or problems should personally contact the Applicant Processing Division's Scheduling Unit at (718) 972-7344.

Candidates <u>must</u> bring the following on their appointment date:

❖ (2) PENS WHICH WRITE IN BLACK INK
❖ *ONE (1) U.S. POSTAL MONEY ORDER IN THE AMOUNT OF $75.00.* This fee is to process your New York State fingerprints. (DO NOT FILL OUT). Fingerprints are valid one year only.
❖ MILITARY CANDIDATES SHOULD BRING A COPY OF THEIR DD214 (member 4).
❖ *CANDIDATE MUST BRING A SEPARATE $5.00 POSTAL MONEY ORDER FOR PHOTOS.*
❖ BRING VALID PHOTO IDENTIFICATION (i.e. driver's license, passport etc.) and two (2) photocopies.
❖ CONTACT LENSES OR EYEGLASSES WITH CASE (if applicable)
❖ *STUDENT COPY OF ACCREDITED COLLEGE TRANSCRIPT. COPY OF BURSAR'S RECEIPT, IF NECESSARY,* SHOWING YOU PRESENTLY ENROLLED AND ABLE TO COMPLETE THE REQUIRED 60 CREDITS BY July 1, 2011.

Candidates should:

-Wear **PROPER BUSINESS ATTIRE**
-Know their resident precinct or the name of the Police Department that covers their home area.
-Know their exam and list number as it appears on the front of this envelope.
-Foreign born candidates must bring naturalization papers and know their "A" number.

Candidates who do not appear as scheduled will delay their processing and may not be considered for the upcoming recruit class.

***READ 2ᴺᴰ PAGE AND FOLLOW INSTRUCTIONS !**

COURTESY   •   PROFESSIONALISM   •   RESPECT
**Website: http://nyc.gov/nypd**

 POLICE DEPARTMENT

Dear Candidate:                                                                  Exam # 8322

In order to begin your process you must complete the Personal History Questionnaire (APD 5) currently available online at http://www.nyc.gov/nypd.   Once you have logged on:

- Click on 'Careers' link under 'Learn About' on the navigation menu.
- Click on 'Forms' under 'Police Application Process'.
- Click on 'APD-5 Personal History Questionnaire' under Application Process/Online Forms.
- Click on 'Register'; enter your date of birth and your examination number (8322).  If you have served in the U.S. Military, you may enter up to five (5) years of active duty to adjust your age.
- Click 'Verify Age' if you have entered incorrect information, or if the system indicates that you are overage or underage, you will be prompted to contact the Applicant Processing Division's Candidate Relations Sections at (718) 972-3120.
- Login on the registration page; you must select a username and a password.  Your username should be 6-10 characters; your password should contain at least one uppercase letter and one number.
- Choose exam 8322 and click on 'Select Exam'.
- Under 'All Available Forms' click on APD 5.  This will bring you to the Personal History Questionnaire.  This form is divided into fifteen (15) separate sections.  You must answer **ALL** questions.  You may save and exit this form at any time.  However, once this form is finalized, no further changes can be made.  You must finalize this form to begin your investigative process.  You are only required to complete and finalize the APD 5 Personal History Questionnaire at this time.
- **Your APD-5 Personal History Questionnaire must be completed by April 20, 2011 in order to continue with your investigative process.**

If you do not have access to a computer, you may make arrangements to utilize a computer terminal at one of the Applicant Processing Division's Investigative Facilities.  You must contact the Applicant Processing Division's Candidate Relations Section at (718) 972-3120 or via e-mail at APD@NYPD.org to make arrangements.

**Candidates who do not meet these qualification requirements, or have any questions or concerns should contact the Applicant Processing Division's Candidate Relations Section at (718) 972-3120.**

Walter T. Salowski
DEPUTY CHIEF

MY BIRTH CERTIFICATE
GEO
MARRIAGE CERTIFICATE
CHILDRENS BIRTH CERTIFICATES
SS CARD
LICENSE

-2-

COURTESY  •  PROFESSIONALISM  •  RESPECT
Website: http://nyc.gov/nypd

PD 150-151 (Rev. 04-01)-Pam

# EXHIBIT B

57 East Concord Drive                              Exam #8322 List #98
Monsey, NY 10952

September 13, 2011

Commissioner Zeigler
Office of Equal Employment Opportunity
One Police Plaza, Room 1204
New York, NY 10038

Dear Commissioner Zeigler,

My name is Fishel Litzman and I am currently a candidate for Police Officer
in the NYPD. I have completed and passed all the rigorous testing to be
eligible for the next academy. This letter is humbly requesting a Religious
Accommodation to keep my beard intact.

I am an Orthodox Jew who has adhered to its strict rules all my life and as
such I have NEVER shaved, cut, or trimmed my beard in any manner. With
this strong commitment to my religion comes an equally strong commitment
to my career. I have faithfully worked in EMS for almost 15 years as an
Orthodox Jew and have always demonstrated very strong moral character,
high ethical standards, and a beacon of honesty on The Job and to The Job,
not to mention time and again going the extra mile or even ten to help a
Member of Service.

I very much look forward to a meeting with you discussing this issue and it
is my sincerest hope that my religious observance will not impede upon my
life's dream of becoming a New York City Police Officer.


Sincerely,



Fishel Litzman
NYPD Police Officer Candidate


Enclosures (3)



**REASONABLE ACCOMMODATION REQUEST**
**FOR EMPLOYEES ONLY**
PD 407-015 (03-07)

FOR OEEO USE ONLY

RA# _____

## CONFIDENTIAL

The New York City Police Department will make reasonable accommodations to qualified employees with disabilities and/or religious requirement, unless providing such accommodations would impose undue hardship.

**Section I** – Employees to answer completely.

Rank/Title/Name: _CANDIDATE  FISHEL  LITZMAN_

Command (No Abbreviations): _____ Tax. No. _____

Home Telephone No. _845-364-6770_ Address _57 EAST CANCERO DR. MONSEY NY 10952_

Date of Birth: _04/05/1974_ _____ Appointment Date: _____

Type of accommodation requested: ◇ Disability ◈ Religious ◇ Other _____

Please describe the accommodation requested (attach additional information and/or supporting documentation, as appropriate):

_I AM REQUESTING A RELIGIOUS ACCOMMODATION TO KEEP MY_
_BEARD INTACT. ENCLOSED PLEASE FIND A STATEMENT FROM ME_
_AND TWO SUPPORTING LETTERS FROM TWO SEPARATE RABBIS._

Employee's Signature: _____ Date: _9/27/11_

**Upon completion of Section I, submit this form to your IMMEDIATE SUPERVISOR**

**RETALIATION IS PROHIBITED**



CHABAD COMMUNITY CENTER
For Jewish Life And Learning

MEANINGFUL, SPIRITUAL AND JOYFUL JUDAISM

July 17, 2011

To whom it may concern,

Please be advised that I am a Rabbi and the spiritual adviser of Fishel Litzman, residing at 57 E Concord in Monsey NY.

Due to his strict observance of Jewish law, custom and tradition he does not shave, trim or otherwise cut his beard. This is in accordance with Jewish law practiced by the Chabad Community worldwide.

Any courtesy extended to him in light of the above will be greatly appreciated.

Should you need any further information please call me at 405-286-0900.

Rabbi Ovadia Goldman
Executive Director

3000 W Hefner Rd • Oklahoma City, OK 73120 • Phone: 405.286.0900 • www.jewishokc.com

-בס"ד-

# בד"צ ליובאוויטש דמאנסי

שע"י ק"ק צמח צדק ליובאוויטש

## Lubavitch Beth Din of Monsey

2 Langeries Drive, Monsey NY 10952 • (845) 425-2556

הרב ברוך דוב לעש, אב"ד ·

July 20, 2011

To Whom It May Concern:

As the Rabbi of Fishel Litzman's congregation, I wish to confirm that Mr. Fishel Litzman is a devout practicing Orthodox Jew and as such adheres strictly to the laws, customs and traditions of his faith. Those include a strict prohibition of shaving or cutting his beard in any manner. I can speak with certainty that he has lived his entire life adhering to these traditions and for these religious purposes has NEVER cut or shaved his beard EVER. Any and all courtesies extended to him will be greatly appreciated.

For any questions I can be reached at 845-425-2556.

Thanking you in advance for all help in this matter,

Respectfully,

Rabbi B. Lesches

EXHIBIT C



POLICE DEPARTMENT
Office of Equal Employment Opportunity
One Police Plaza, Room 1204
New York, NY 10038
(646) 610-5330

**CONFIDENTIAL**

REPORT UNDER
OEEO INQUIRY #2011-0579

October 3, 2011

Mr. Fishel Litzman
57 Concord Drive
Monsey, New York  10952

**RE:  YOUR INQUIRY**

Dear Mr. Litzman:

We have received your letter regarding a religious accommodation for a beard.

Please be advised that in the event that you become a Police Recruit, your inquiry will be addressed.

Sincerely,

Cynthia A. Francis
Deputy Inspector
Executive Officer

CAF:ag

*RETALIATION IS PROHIBITED*
COURTESY ● PROFESSIONALISM ● RESPECT

# EXHIBIT D



POLICE DEPARTMENT
Office of Equal Employment Opportunity
One Police Plaza, Room 1204
New York, NY 10038
(646) 610-5330

**CONFIDENTIAL**

REPORT UNDER
OEEO RA #2012-0005

January 24, 2012

Fishel Litzman
Probationary Police Officer
57 East Concord Drive
Monsey, New York 10952

RE:     **VIOLATION OF PATROL GUIDE 203-07 PERFORMANCE ON
DUTY-PERSONAL APPEARANCE; DENIAL OF REQUEST FOR
REASONABLE ACCOMMODATION**

Dear PPO Litzman:

On January 12, 2012, you submitted a request for a religious accommodation "to not have to shorten the length of my natural beard including trimming or cutting it in any way."

On January 13, 2012, January 17, 2012, and January 24, 2012, you presented yourself at the Office of Equal Employment Opportunity (OEEO). At these meetings, you were advised that the length of your beard was significantly longer than the one millimeter facial hair growth exception granted by the Department as a religious accommodation. You indicated that you would not trim your beard because it is against your religion.

Section 10(c) of Patrol Guide 203-07 "Performance on Duty, Personal Appearance" prohibits beard and goatee growth by uniformed members of the service unless, inter alia, when required for religious observance. In those circumstances, this office grants to religious observers the religious accommodation of one millimeter beard and facial hair growth. You indicated that you would not accept the accommodation of the one millimeter beard growth, and you would not trim or cut your beard to the acceptable length the Department grants as a religious accommodation.

You are hereby informed that you are in violation of Patrol Guide 203-07 in that your beard growth exceeds the one millimeter religious exception.

YOUR REQUEST TO **NOT** TRIM OR CUT YOUR BEARD FOR RELIGIOUS REASONS IS DENIED.

Sincerely,

D I Francis

Cynthia A. Francis
Deputy Inspector
Executive Officer

CAF:ag

*RETALIATION IS PROHIBITED*
COURTESY ● PROFESSIONALISM ● RESPECT

# EXHIBIT E

Roster #16

POLICE DEPARTMENT
CITY OF NEW YORK

February 01, 2012

From:        Probationary Police Officer, Company 12-10

To:          Police Commissioner, Police Department City of New York

Subject:     PPO LITZMAN

    1.    It is with great respect and humility that I send you a UF-49 requesting an exemption for my beard. I was born a Chasidic Jew (Lubavitch sect) adhering to its customs and traditions. As such, I must keep a kempt, unaltered beard.

    2.    All my life I have been someone who loved helping people. As a young teen I was commended by the Rockland County Chief Executive for pulling a child away from a moving bus.  For the last ten years I have worked in EMS as an EMT then a Paramedic, helping the people of NYC. Over the years I gained a deep love for the police and the NYPD in particular. There were many opportunities to care for ill and injured police officers, and I developed close friendships with many officers. The moment an MOS needed *anything* I was there. Running toward a scene where an Officer might require medical care, ensuring there would *never* be a delay getting an ambulance for the MOS. On numerous occasions, that proved to be a decisive factor in a police officer's life. There is a Brooklyn Highway officer that had a fractured neck, post MVA, and is not in a wheelchair because of my quick actions. The Brooklyn North Sergeant who was having a major cardiac event, walked away with minimal damage to his heart because of my quick and decisive actions. When officers in Manhattan North had to take someone's life I raced to the scene. Once it was clear that no officers were injured, I made my way to the perpetrator and treated him with full Advance Life Support, keeping in mind that eventually this would help the officers involved. When the threat was stopped, the perpetrator received the best possible medical care. If it were to be questioned, no one could *ever* say that the police interfered with his care.

    3.    This past Labor Day there was a shooting in the 77 pct after the West Indian Day Parade.  It is because of my expedited decisive actions that the two officers who were with us came out of the direct line of fire. As the officers were watching over us, we tended to the victim on the sidewalk. Approximately two minutes later, the

perpetrator came out shooting. There were over seventy shots fired with two officers hit, but the two officers with us were safely on the way to the hospital. It was about two AM that night when my partner and I lined up against the wall as the Honorable Commissioner passed us on his way to visit the injured MOS at New York Methodist Hospital.

4.    All these years I worked EMS with the goal of becoming a Police Officer in the NYPD. Three years ago I took the entrance exam. I was absolutely elated when I received my first letter from APD in April 2011. After many months of testing and paperwork, it was an incredible feeling to get the call that I would be in the next class. I was officially sworn in by the Mayor on January 9, 2012. Shortly thereafter, I was told that I would need a religious exemption. OEEO advised that it would be judged on a case by case basis. Last Thursday I was notified by HR that my religious exemption was denied. I was strongly encouraged to immediately resign, however, I believe that my love of G-d and my love of the NYPD can coexist.

5.    In the less than four weeks that I have been afforded the privilege to be in The Academy, I have shown myself to be an outstanding student. Your office can verify with Official Company Instructor Det. ---------- that I am one of the top students. I quickly and thoroughly absorb the material being taught. Official Company Instructor Det. ------ takes great pride in students who put in effort, study hard, ace the quizzes, and show that they are here not for a job, but for the love of The Job. Please reach out to Team Leader Sergeant -------------- who has gotten to know me and watch me advance and will verify my academic standing and discipline. He mentioned yesterday "you look like the kind of person we need here". I bring a strong moral and ethical integrity that will only strengthen the NYPD.  I will personify the way an Officer in the NYPD should act and carry himself. I will follow in order to lead. I have committed to earning that braid at graduation, and bring honor and pride to the shield and uniform. I humbly request of you, Honorable Commissioner, to allow me to continue on the path to becoming one of the finest Finest.

Fishel Litzman
Probationary Police Officer

# EXHIBIT F

Roster #16

POLICE DEPARTMENT
CITY OF NEW YORK

March 16, 2012

From:        Probationary Police Officer, Company 12-10

To:          Deputy Commissioner, Personnel

Subject:     COMMAND DISCIPLINE APPEAL

1.    <u>I notified the Department from the outset that I could not trim my beard</u> <u>because of religious observance.</u>  On February 20, 2009, I took a major step towards my dream of becoming a New York City Police Officer.  I took the entrance exam, scored a 97.6% and received an exam number of 98 with no prior law enforcement background.  About two years and two months later, during April of 2011, I received my first APD letter advising me to report to 1 Lefrak City Plaza, for the initial medical.  At that initial appointment everyone had his or her picture taken.  As an Orthodox Chasidic Jew it is absolutely forbidden in my religious beliefs to cut or trim my beard in any way.  While meeting with my investigator I inquired about keeping my naturally short beard intact.  C.I. ------ advised me that she would get me a religious accommodation form that should be filled out with supporting documentation from my Rabbi.  I completed the forms as instructed along with a personal letter of appeal to Deputy Commissioner Zeigler, OEEO (copies of the request and the supporting documentation are set forth on <u>Exhibit A</u> attached hereto).  In response, I received a short letter stating that in the event I become a Police Recruit it would be addressed then.  At no time was I advised that I would be required to cut or trim my beard.

2.    <u>I relied on my acceptance and resigned my job.</u>  Upon being advised that I was selected for the 2012 class, I was extremely excited.  As a father of five children, I was working full time in the field of pre-hospital emergency medicine.  After being sworn in by the Mayor, I resigned my current employment as instructed by the NYPD.  Since I had applied for an exemption before I was accepted and had already been photographed, I believed that the NYPD was aware of my religious needs and accepted me knowing that I needed to keep my beard intact.

3.    <u>I have worked conscientiously and assiduously to satisfy all Department</u> <u>requirements while keeping my religiously mandated beard.</u>  January 9, 2012 was a very

proud day for me. I was sworn in as a NYC Police Officer and then officially by the Mayor the day after. It was then that I started to study and train hard to deserve to wear the uniform. Within the first few days at Queens College I was advised that I must request a religious accommodation through OEEO and that it was judged "on a case by case basis." I was then ordered to proceed to HR where I was again asked to write about my request for a religious accommodation. In the course of my conversation with Sgt. ------ I was asked about myself as a person. We discussed how all of my life I have been helping people (with a special emphasis on MOS), especially as an EMT and then Paramedic for almost ten years in the NYC-EMS system. I told Sgt. ----- how I feel with all my heart that I belong here and this is what I was meant to do. Again I wrote about leaving my naturally very short beard intact. Following this interaction, I was ordered to OEEO twice. Both times I stated very respectfully that I could not cut or trim my beard due to my religious beliefs. On the third time I was ordered to OEEO, I was informed that I could not maintain my beard the way it was. Several days later I received the denial of my religious accommodation by OEEO.

4.  <u>I am being disciplined only because I maintain my religious beliefs and observances.</u> After the denial by OEEO I was called to RDU. I continued to explain that I cannot cut my beard for religious reasons. I subsequently received four consecutive CD's for Monday through Thursday of that week. I had a conversation with Sgt. ---- of RDU. We discussed my situation and he indicated that he was supportive of me because he had seen my performance in the academy. As part of my four consecutive CD's, I was also punished with the loss of two vacation days. Other than for leaving my beard intact, I have been fully compliant with the rules and regulations of the Recruit Officer Handbook and the Patrol Guide.

5.  <u>My performance at the academy has been exemplary.</u> Sgt. -------, our team leader, called me in and spoke to me. He mentioned that he respects what I am doing in the academy both academically and religiously and that "we need more people like you in here". He stated that if called to a meeting he would "go to bat for me". Lt. ------- also spoke to me and stated his support for me. I told him that I got a 99% on the first trimester exam, did a 2:39 on the JST, and came in fourth in my company on the run with a 10:29. Sgt. ----- told me that a 99% on the exam is indicative of a serious student. My Official Company Instructor, -------, takes great pride in students who show they are not here just for a job, but for the love of the job.

6.  <u>My only wish is to be permitted to serve with the Department.</u> This past week I was ordered to EMD where I met with Lt. -----. I explained that I don't want to make waves, and I just want to be given the opportunity to perform to the best of my abilities. Lt. ------ voiced her support stating that she could see my sincerity, and my actions and scores speak for themselves.

7.  <u>The Department permits many police officers to wear beards.</u> It is not a secret that there are many beards worn in the Department. From the beginning at HR and *every* step of the way I have been told the same thing: "Cut your beard now and when you get out (of the academy) nobody will ever bother you again." I cannot, as a matter of

religious conscience, follow that instruction because I may not trim my beard even temporarily to complete the Academy. I am requesting an above-board individual exemption that will let me continue to bring my "A" game to the NYPD, in the same way I have over the past 10 weeks. I have committed to earning the braid at graduation.

8.    <u>My principled position is an indication of the integrity I will bring to my role as a police officer.</u>  One of the points that has been drilled home during my short time at the academy is the need to represent the NYPD with integrity. Although not knowing whether I will be punished for maintaining my religious beliefs has been very taxing on me and my family, I will not waver in my firm belief that I can be a successful member of the NYPD and an Orthodox Chasidic Jew at the same time. I believe that my love of G-d and my love of the NYPD can coexist.

9.    <u>I am formally requesting the religious accommodation that I believe the Department can grant.</u>  As my academic and physical scores attest, I am focused on dedicating myself to being the best Probationary Police Officer I can be. I respectfully request that I be granted a religious accommodation that matches my religious beliefs and permits me to leave my beard intact and that my lost vacation days be reinstated.

10.    <u>My assurance of good faith and cooperation.</u>  I will cooperate fully regarding this matter. I can assure the Department that if my exemption is granted, my career will continue without any incidents and bring honor and pride to the shield and uniform. Thank you very much in advance for your consideration of this matter.

Fishel Litzman
Probationary Police Officer

# EXHIBIT G



POLICE DEPARTMENT

Employee Management Division
1 Police Plaza – Room 1000
New York, N.Y. 10038

June 7, 2012

Fishel C. Litzman
Tax # 951926
SS # xxx-xx-7707

You are hereby notified that your services as a Probationary Police Officer in the New York City Police Department are terminated effective **1453 hours, June 7, 2012,** by the Police Commissioner, pursuant to the New York City Department of Citywide Administrative Services Personnel Rules and Regulations 5.2.7.

Paula Berlinerman
Assistant Commissioner
Employee Management Division

I have received the original of this notice at ____0714____ hours, on June 8, 2012.

Fishel C. Litzman

Witness Signature

Sgt. Herbert Mai
Print-Witness Title, Name

920540
Tax #

DCTRIU
Command

COURTESY  •  PROFESSIONALISM  •  RESPECT
Website: http://nyc.gov/nypd

Mac 242-58 (10-05) Prin

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

X - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FISHEL LITZMAN,

*Plaintiff,*

v.

NEW YORK CITY POLICE DEPARTMENT, THE CITY OF NEW YORK,
and RAYMOND W. KELLY, AS
COMMISSIONER OF THE NEW YORK
CITY POLICE DEPARTMENT,

*Defendants.*

X - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT FOR INJUNCTION AND DAMAGES

X - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**LEWIN & LEWIN, LLP**
1775 Eye Street NW, Suite 850
Washington, DC  20006
(202) 828-1000

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
(212) 344-5400

***Attorneys for Plaintiff***