UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
FISHEL LITZMAN,

|                                              |                              |
|----------------------------------------------|------------------------------|
| Plaintiff,                                   | 12 Civ. 4681 (HB)            |
| -against-                                    | OPINION & ORDER              |

NEW YORK CITY POLICE
DEPARTMENT, THE CITY OF NEW
YORK, RAYMOND W. KELLY, as
Commissioner of the New York City Police
Department,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Hon. HAROLD BAER, JR., District Judge:[1]

      Before the Court is a motion for summary judgment brought by Plaintiff Fishel Litzman ("Plaintiff") against Defendants New York City Police Department ("NYPD"), the City of New York, and Raymond W. Kelly, as the Commissioner of the New York City Police Department (together "Defendants").  Defendants cross-move for summary judgment.  Plaintiff challenges the NYPD's limited religious exemption to its general no-beard policy based on the Free Exercise and Due Process clauses of the U.S. Constitution pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), as well as the Free Exercise Clause in Article I, Section 3 of the New York Constitution, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq.*  For the reasons below, Plaintiff's motion for summary judgment is GRANTED with respect to all but the Due Process and Title VII claims.

## Background

      The following facts are not in dispute.  Plaintiff follows the rules and traditions of the Chabad Lubavitch Jewish community, and his Orthodox Jewish faith prohibits him from cutting or trimming his facial hair. (Pl.'s 56.1 ¶¶ 3, 4.)  His facial hair naturally grows out to be one inch from his skin. (*Id.* ¶ 5.)  Plaintiff was accepted into the NYPD's Police Academy and was sworn

---

[1] Tabetha Peavey, a second-year student at UC Berkeley School of Law and an intern in my Chambers, provided substantial assistance in researching and drafting this opinion.

in as a Probationary Police Officer on January 9, 2012. (*Id.* ¶ 15.) He resigned from his previous employment at the NYPD's direction. (*Id.* ¶ 17.)

The NYPD's Patrol Guide Procedure 203-07 generally prohibits police officers from growing beards but makes exceptions for undercover duties, medical conditions, and religious accommodations, although the latter two depend on written approval by the Police Surgeon or the Deputy Commissioner of the NYPD's Office of Equal Employment Opportunity ("OEEO"). (McNally Decl. Ex. E at 2-3.)  In practice, medical and religious accommodations related to facial hair are limited to beards that are one millimeter or less in length. (Pl.'s 56.1 ¶ 26; Defs.' 56.1 ¶ 26.) The NYPD has failed to produce a document that officially states the one-millimeter rule.[2] (*See id.*) When Plaintiff made a religious accommodation request with respect to his one-inch beard, he was repeatedly told by the OEEO that his beard would have to be trimmed to one millimeter or less in length, and on January 24, 2012, his requested accommodation was denied. (Pl.'s 56.1 ¶¶ 20, 21.)  Plaintiff received four "Command Disciplines" regarding his beard in January and February of 2012, for violating Patrol Guide Procedure 203-07, "Performance on Duty – Personal Appearance," and shortly thereafter, he submitted requests to the Police Commissioner and the Deputy Commissioner seeking an accommodation, but received no response. (*Id.* ¶ 24.)  On June 8, 2012, Plaintiff received a termination letter. (*Id.* ¶ 25.)  At the time of his termination, Plaintiff ranked in the top 1.3% of his Police Academy class. (Defs.' 56.1 ¶ 19.)

Defendants agree that the NYPD presently has police officers with beards in excess of one millimeter in length, but those officers are either working undercover or are in violation of the Patrol Guide Procedure. (*Id.* ¶ 27.)  The NYPD's position is that it cannot accommodate Plaintiff's one-inch beard because newly graduated police officers must shave at least once each year to be certified to use an MSA Millennium model respirator. (*Id.* ¶ 27.)  The first portion of the training program for the use of this apparatus requires the officer to go through a "fit test," which is a series of seven one-minute tests to determine whether the respirator properly seals the officer's face. (*Id.* ¶¶ 36, 38-40.)  Proper sealing is not possible with facial hair. (*Id.*) The federal regulations promulgated by the Occupational Health and Safety Administration ("OSHA")

---

[2] The only document that Defendants produced that references the one-millimeter rule is a form titled "Acknowledgment of Reasonable Accommodation for Beard and Head Covering" provided by the OEEO to officers who have been granted a religious exemption and which those officers are required to sign. (McNally Decl. Ex. G-I.)

require both initial and annual fit-testing and prohibit the use of respirators by employees with facial hair. (*Id.* ¶ 42; 29 C.F.R. 1910.134(f)(2), (g)(1)(i)(A).)  The NYPD's Chemical Ordinance, Biological and Radiological Awareness Training Program ("CBRN Certification") was incorporated into the Police Academy's curriculum in 2005, and all recent and new graduates of the Police Academy are required to be CBRN-certified, pursuant to NYPD policy. (O'Keefe Decl. ¶ 9; Defs.' 56.1 ¶¶ 57, 60.)  In addition, other police officers are certified upon request or if certification is relevant to an assignment. (*Id.* ¶ 61.)  At present, while 69.3% of the NYPD's officers have been trained and issued an MSA Millennium respirator, 99.8% of the July 2011 recruit class and 100% of January and July 2012 recruit classes have been trained and certified. (*Id.* ¶¶ 62, 58.)

## Discussion

Summary judgment should be granted in favor of a movant where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a). In this case, at oral argument, Defendants stated that they had "not anticipate[d] that the Plaintiff would basically accept for purposes of this motion all of the facts that we asserted as true." June 27, 2013, Oral Argument Tr. 15: 9-11. As the parties agree that the facts are undisputed, I need only consider the legal questions the parties raise.

### A. Constitutional Claims Pursuant to § 1983

Plaintiff brings his constitutional claims pursuant to 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). To successfully make a claim under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).  That Defendants acted under color of state law is not disputed. Rather, I consider below whether Defendants' conduct deprived Plaintiff of his constitutional rights under the Free Exercise and Due Process clauses of the U.S. Constitution.

#### 1. Free Exercise Claim under the U.S. Constitution

Under the Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, "enforcement of laws or policies that substantially burden

the exercise of sincerely held religious beliefs is subject to strict scrutiny," and once shown, in order to prevail, the government must demonstrate that such a law is "narrowly tailored" to advance "interests of the highest order." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). These interests must be protected "sometimes even at the expense of other interests of admittedly high social importance." *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972). "Where the government seeks to enforce a law that is neutral and of general applicability, however, then it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Id*. (citing *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990).

Citing *Smith*, Defendants urge the Court to apply the rational basis test because the NYPD's no-beard policy, as well as the one-millimeter exemption, is a generally applicable and neutral rule.  I disagree; "[f]acial neutrality is not determinative" when the record shows that Plaintiff was terminated pursuant to a policy that is not uniformly enforced. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993).  The Supreme Court instructs that "[t]he Free Exercise Clause . . . extends beyond facial discrimination" and that "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id*.  Indeed, *Smith* approves strict scrutiny in certain circumstances: "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." 494 U.S. at 884 (citing *Bowen v. Roy*, 476 U.S. 693, 708 (1986)).  Here, the undisputed record demonstrates that de facto exemptions to the one-millimeter rule abound.  The record shows that the NYPD provides temporary exemptions to police officers who grow beards beyond the one-millimeter limit for special occasions, such as religious holidays, weddings, and funerals. *See* McNally Decl. Ex. F.  Defendants also admit that the NYPD has police officers with beards in excess of one-millimeter in length, not only because of formal exemptions due to undercover assignments, but also because the NYPD does not always enforce its personal appearance standards. (Defs.' 56.1 ¶ 27.) Because there is evidence that the NYPD exercises discretion with respect to a facially neutral rule in a discriminatory fashion, strict scrutiny is appropriate. *See Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. City of N. Y.,* 914 F.2d 348, 354-55 (2d Cir.1990).

4

Interestingly, Defendants attempt to distinguish these officers from the Plaintiff by arguing that the one-millimeter limit is really a proxy for an officer's willingness to shave for CBRN Certification pursuant to OSHA regulations. *See* Defs.' 56.1 ¶ 27 ("nevertheless, these officers, [who have beards longer than one millimeter without any exemption] unlike Litzman, can and will shave their beards if needed for CBRN recertification training, or in the event of an actual emergency requiring them to don and use the MSA Millennium respirator"). I begin by noting that the record does not reflect that CBRN Certification was the real ground for Plaintiff's termination. *See* Pl.'s 56.1 ¶ 20. Indeed, the Plaintiff was not informed that his termination was related to CBRN Certification at all; rather, he "was instructed at the NYPD Office of Equal Employment Opportunity on January 13, January 17, and January 24, 2012, that he would have to trim his beard not to exceed one millimeter in length," without an explanation as to why (Pl.'s 56.1 ¶ 20.) Further and more troubling is the NYPD's Operations Order No. 44, which provides a medical exemption to the regular CBRN certification procedure, permitting officers to serve in a "Limited Capacity" status based on "the nature or severity of their medical condition." (McNally Decl. Ex. B, at 1.) Pursuant to that order, qualifying officers are "prohibited from participating in the fit-testing component . . . and prohibited from wearing a respirator or being certified for CBRN/HazMat Operations Level field deployment," but are nonetheless "allowed to participate in other aspects of the two (2) day and/or recertification training."[3] (*Id*.) If the NYPD cannot accommodate Plaintiff's one-inch beard because of the CBRN certification requirement, but has provided a medical exemption, per Operations Order No. 44, all the more reason to apply strict scrutiny to the one-millimeter rule. In a similar challenge to a Newark Police Department policy where medical exemptions were considered for the Department's no-beard policy, but religious exemptions were not, then-Circuit Judge Alito found that heightened scrutiny was appropriate where "the Department has made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not." *See Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999). *See also, Riback v. Las Vegas Metro. Police*, No. 2:07-CV-1152, 2008 WL 3211279, at *6 (D. Nev. Aug. 6, 2008).

---

[3] This exemption appears to be consistent with the fact that Plaintiff went through the CBRN training and learned how to use the MSA Millennium respirator without certification. Litzman Decl. ¶ 4.

To withstand strict scrutiny, the one-millimeter rule "must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993).  Defendants acknowledge that the Third Circuit held that the police department's partial no-beard policy was not narrowly tailored to serve "uniformity of appearance," but Defendants urge that their counterterrorism and emergency preparedness goals are adequate compelling interests. Defs.' Opp. Memo at 15.  Even assuming that the goal of reaching 100% CBRN Certification constitutes a compelling interest, the City's one-millimeter rule is not sufficiently narrowly tailored.  The analysis of the *Newark* case—that a partial no-beard policy is not narrowly tailored to serve a compelling interest—is equally applicable to the CBRN Certification. 170 F.3d 366-7; *cf. Denver Area Educ. Telecomm. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 806 (1996) ("Partial service of a compelling interest is not narrow tailoring.").  As laudable as the NYPD's goal of reaching the 100% CBRN Certification rate is, the NYPD provides no legitimate explanation as to why Plaintiff must be terminated when 30% of the NYPD officers have not been certified.  Although the NYPD emphasizes Plaintiff's status as a new graduate who is more likely to be deployed to emergency areas, Operations Order No. 44, which provides a medical accommodation to the CBRN Certification, does not make any distinction with respect to newly graduated officers. McNally Decl. Ex. B.

Defendants also argue that in an emergency situation, NYPD officers, particularly recent Police Academy graduates who are expected to be first responders, ought be interchangeable with other recent graduates (Defs. Opp. Memo at 5-6; O'Keefe Decl. ¶ 31). Defendants assert that the Plaintiff will not be interchangeable with a member of the police force who is clean-shaven and can immediately respond to an emergency requiring use of an MSA Model Respirator. *Id.* While this is likely so, it does not explain how an officer with a one-millimeter beard, in compliance with NYPD policy for new Police Academy graduates, would be interchangeable with other clean-shaven officers. Those "one-millimeter officers," just like the Plaintiff, would be equally unable to use the respirator until they have shaved.[4]  Further, Plaintiff has addressed this emergency concern through his submission of affidavits from two rabbis, who state that Plaintiff would be able to shave his beard in an life-threatening emergency, in order to

---

[4] Defendants indicate that there are at least four officers in Plaintiffs' class at the Police Academy who were granted accommodations to maintain beards of up to one millimeter. (O'Keefe Decl. ¶ 32**.)** These officers, like Plaintiff, would need to shave prior to using the MSA Model Respirator.

save his own life or the lives of others, without violating his religious beliefs. (Goldman Aff. ¶ 4; Lesches Aff. ¶ 4.)   Similarly, although Defendants attempt to distinguish this case from the *Newark* case by arguing that the one-millimeter rule applies to both medical and religious accommodations, the exemption from CBRN Certification is offered only to officers with medical reasons, not those with religious reasons. (*See* McNally Decl. Ex. B). Here, as in the *Newark* case, medical, secular explanations have been valued over religious explanations. *See, Newark 170 F.3d* at 366.  Neither in their brief nor at oral argument did the Defendants provide a legitimate explanation as to why the one-millimeter rule is enforced unevenly throughout the department, i.e. why Plaintiff was terminated when other officers who have beards longer than one millimeter remain on the force without any exemption or why some temporary exemptions are permitted.[5]   As such, Defendants fail to satisfy strict scrutiny, and summary judgment is granted for the Plaintiff on the § 1983 and New York State Constitutional claims.

**2. Due Process Claim under the Fifth and Fourteenth Amendments**

Although it is difficult to discern the exact nature of Plaintiff's due process claim from his motion papers, the Complaint alleges that his due process rights were violated because the one-millimeter exception was "not stated in any police regulation or in the 'Patrol Guide'" and because it is "arbitrary and irrational." *See* Compl. ¶¶50-51.  In a letter dated June 28, 2013, Plaintiff further clarified that his argument rests on substantive, rather than procedural, due process grounds.

The Due Process Clause "in the substantive sense" protects individuals against arbitrary government action, and "[i]n assessing whether a government regulation impinges on a substantive due process right, the first step is to determine whether the asserted right is 'fundamental.'" *Leebaert v. Harrington*, 332 F.3d 134, 139-40 (2d Cir. 2003). Where the right infringed is fundamental, strict scrutiny applies; for other rights, the government needs to show only a rational basis. *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2022 (U.S. 2013).  In the context of public employment, however, "a liberty interest in appearance" is "far from a 'fundamental right' and is therefore afforded only

---

[5] A similar analysis applies to Plaintiff's parallel Free Exercise claim under the New York State Constitution, which is "more protective of religious exercise" than the Federal Constitution. *Catholic Charities of Diocese of Albany v. Serio*, 859 N.E.2d 459, 466-7 (N.Y. 2006).  "The difference in the state and federal tests is immaterial here, because the Court finds that Plaintiffs have stated a free exercise clause claim under the First Amendment." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, n.20 (S.D.N.Y. 2013).

the minimal protection of the rational basis test." *Zalewska v. Cnty. of Sullivan, New York*, 316 F.3d 314, 321 (2d Cir. 2003) (citations omitted).

Applying that test, Plaintiff's due process claim must fail.  Defendants are only required to "articulate a legitimate government interest to which its regulation is rationally related." *Id.* at 322.  Notably, the Supreme Court instructs that "[c]hoice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power." *Kelley v. Johnson*, 425 U.S. 238, 247 (1976).  Defendants state that the one-millimeter exception strikes an important balance between providing medical and religious accommodations and maintaining the desired uniformity of the officers' neat and professional appearance.  They need say no more. *See id.* at 247-48 (finding a police department's grooming policy rational on either the ground of easy public recognition or a desire for the esprit de corps).  Defendants' motion for summary judgment with regard to the substantive due process claim is granted.

**B. Reasonable Accommodation Claims**

**1. Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq*)**

Title VII prohibits discrimination in employment on the basis of "religion," which is defined therein to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). To establish that the employer failed to provide a reasonable accommodation, plaintiffs must first establish a prima facie case by showing that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight v. Conn. Dep't of Pub. Health,* 275 F.3d 156, 167 (2d Cir. 2001).  Once a prima facie case is established by the employee, "the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship." *Id*.

Although Defendants do not dispute that Plaintiff has established a prima facie case they argue that providing a reasonable accommodation would create an undue hardship because of his inability to be CBRN-certified.  Defendants assert that accommodating Plaintiff's beard would

compromise the NYPD's goal of eventually achieving 100% CBRN certification and reduce the NYPD's flexibility and efficiency to deploy officers during an emergency.

Plaintiff's claim under Title VII is denied because Defendants have satisfied their burden to demonstrate undue hardship. "An accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the employer." *Baker v. The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006) (quoting *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84 (1977)). An employer may show that the cost of accommodation is more than minimal by showing either "lost efficiency in other jobs or higher wages." *Trans World Airlines, Inc.* 432 U.S. at 84. Defendants meet that burden by explaining that Plaintiff will not be interchangeable with other CBRN-certified officers, thereby decreasing the efficiency of the Department to respond to emergencies. *See Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382 (9th Cir. 1984) (finding undue hardship because the employer would have to modify the existing system of duty assignments in order to accommodate the plaintiff's inability to wear a respirator due to his beard). Defendants' motion for summary judgment with respect to Plaintiff's Title VII claim is granted.

### 2. NYCHRL

Although Title VII's analytical framework is applicable to the NYCHRL, *Waltzer v. Triumph Apparel Corp.*, No. 09 Civ. 288, 2010 WL 565428, at *8 (S.D.N.Y. Feb. 18, 2010), claims under the City law must be reviewed "independently from and more liberally" than their federal counterparts, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing The Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005)). Importantly, in contrast to Title VII which does not define "undue hardship" in the context of religious accommodation, the NYCHRL adopts a rigorous definition of an employer's "undue hardship" as "an accommodation requiring significant expense or difficulty," and mandating that "[t]he employer shall have the burden of proof to show such hardship." N.Y.C. Admin. Code § 8–107(3)(b). In determining whether an economic undue hardship exists, courts are explicitly instructed to consider the following factors:

> (i) the identifiable cost of the accommodation, including the costs of loss of productivity and of retaining or hiring employees or transferring employees from one facility to another, in relation to the size and operating cost of the employer;
> (ii) the number of individuals who will need the particular accommodation to a sincerely held religious observance or practice; and

(iii) for an employer with multiple facilities, the degree to which the geographic separateness or administrative or fiscal relationship of the facilities will make the accommodation more difficult or expensive.

N.Y.C. Admin. Code § 8–107(3)(b).The protections afforded under Title VII are to be considered "a floor below which the City's Human Rights law cannot fall." N.Y.C. Local Law No. 85 § 1 (2005).

Summary judgment for the Plaintiff must be granted with respect to the NYCHRL claim because Defendants have failed to meet the higher burden of "undue hardship" under the City Law. The Second Circuit recently instructed courts to "analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible . . . . even if the challenged conduct is not actionable under federal and state law . . . ." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (citations and internal quotations omitted). Although Defendants have shown that the cost of accommodation is more than minimal because there would be some lost efficiency, as discussed above, they have not shown that there would be "significant expense or difficulty." In the absence of any details about the costs of accommodation and other individuals who may seek a similar accommodation, the Court cannot conclude that Defendants would accrue significant expense or difficulty if Plaintiff joined the 30% of NYPD officers who are not CBRN certified or those who qualify for a medical exemption pursuant to Operations Order No. 44. Accordingly, summary judgment for Plaintiff is granted on the NYCHRL claim.

### Conclusion

The Court has considered the parties' other arguments and finds them to be without merit. Plaintiff's motion for summary judgment is GRANTED with respect to all but the Due Process and Title VII claims. Plaintiff is further ORDERED to submit a proposed order on notice that sets forth desired relief within 10 days of this Order.

**SO ORDERED.**

November **15**, 2013
New York, New York

_____
Hon. Harold Baer, Jr.
U.S.D.J.

10